FREDERICK M. MORSE, administrator, *vs.* COMMERCIAL TRAVELLERS' EASTERN ACCIDENT ASSOCIATION.

Suffolk.    March 19, 1912. — May 24, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Insurance,* Accident. *Negligence,* In use of cânoe.

A fraternal beneficiary certificate providing an indemnity for death of the insured contained a condition that no indemnity should be paid for death resulting from "any injury caused wholly or in part, directly or indirectly, by . . . voluntary exposure to unnecessary danger; . . . nor for any injury which the member, by the exercise of ordinary care, prudence, and foresight, might have averted or prevented, or to which the member's own negligence shall have contributed." The certificate holder was drowned from the capsizing of a canoe in which with a companion he was paddling on Moosehead Lake in Maine. It appeared that in the morning of the day of the accident he with his companion

had made a difficult trip to a point near a mountain, and during the trip had passed through waters as rough as any on the lake, that there was a strong wind blowing from the mountain over the lake in such a way that from the shore the water did not look excessively rough, but that a mile and a half from the shore it became dangerous, that before the certificate holder and his companion started on their afternoon trip they were warned by several experienced guides that the lake was so dangerous that no canoes were on it, and that, without further inquiry they embarked and about a mile and a half from the shore were drowned. *Held,* that the catastrophe was not one resulting from over confidence for which there were reasonable grounds or from an error of judgment in regard to a matter concerning which prudent men might differ, but that it involved a lack of ordinary care and a hazardous exposure to risk of such a nature that there could be no recovery on the certificate.

MORTON, J.   This is a bill in equity by the administrator of the estate of Frank F. Morse to compel the assessment by the defendant on its members surviving at the death of the intestate of the sum of $2 each, and from the sum so realized to compel the payment to the plaintiff, for the benefit of Elizabeth G. Morse, the beneficiary named in the certificate of membership in the defendant association which the deceased held at the time of his death, of the amount realized therefrom not exceeding $5,000. There was a decree * dismissing the bill and the plaintiff appealed.

The deceased came to his death by accidental drowning on Moosehead Lake, on September 20, 1898.   The certificate provided amongst other things that "no indemnity shall be paid to any member . . . for any injury caused wholly or in part, directly or indirectly, by . . . voluntary exposure to unnecessary danger; . . . nor for any injury which the member, by the exercise of ordinary care, prudence, and foresight, might have averted or prevented, or to which the member's own negligence shall have contributed.   Nor shall any indemnity be paid to the beneficiary of any member for the death of said member resulting from an injury caused wholly or in part, directly or indirectly, by either of the foregoing causes."

The intestate and a companion had been in the Moosehead Lake region on a canoe trip for a vacation.   On the morning of the day of the accident they were at a place called Socatean Point, about ten miles northwest of Mount Kineo, and paddled from there to Point Kineo, arriving about noon.   There was a strong northwest wind, and the master found that over a part of the course,

* By *Pierce,* J.

going one way, the water was as rough and dangerous as it was in any other part of the lake. There was another course which was much less dangerous. It did not appear which course the intestate and his companion took. But as already stated, they arrived at Point Kineo safely about noon. They took in a pailful of water on the trip. They stayed at the hotel about two hours and later returned to the canoe and started to paddle to Moody Island, about two miles down the lake in a southeasterly direction from the hotel. Between the time that they arrived at Point Kineo and the time when they started for Moody Island they were spoken to by several guides and cautioned about going out, and were told that it would be dangerous and that no canoes were out on the lake because the guides thought it dangerous. In spite of the warning thus given and of the condition of the weather, they started out. They were watched for about a mile and a half, the canoe and its occupants occasionally disappearing in the trough of the waves, when a flash was seen, after which the canoe disappeared and was not seen again. There is no finding to that effect by the master*, but it is probable that the flash referred to was caused by the wet bottom of the canoe as it capsized. The canoe was found on the shore of the island and the bodies were recovered about ten days later. The day was one of the worst of the season, the wind blowing from the northwest and gradually increasing in force till about four o'clock. When a northwest wind strikes the mountain it is divided and a part deflected to one side and a part to the other side. These currents and the wind from over the top of the mountain unite from a half a mile to a mile from the shore, leaving the water protected for that distance and causing a very rough, choppy sea where they unite. One standing on the shore would not realize this nor be able to determine just how rough the water was where the winds came together. A short distance from Moody Island there was a submerged ledge, but the master finds that this had nothing to do with the accident and did not cause the drowning of Morse and his companion. The master finds that Morse and his companion did not know of this ledge and made no inquiries about the conditions which they would have to encounter, and not only failed to seek advice but refused such advice as was given; that the general

---

* Thomas L. Wiles, Esquire.

condition of the wind and water should have been a warning to them; that having made a ten mile trip in the morning they must have known that the trip would be a hard one, and that the fact that there were no guides out on the lake in canoes should also have been a warning to them.   He concludes his report as follows: "Upon all the evidence it appears and I find as a fact that the deceased, Frank F. Morse, did not comply with the terms and conditions of his policy.   That his death resulted from an act that he by the exercise of ordinary care, prudence and foresight might have averted or prevented.   Further that his own negligence contributed to his death.   Further that the injury which caused the death was wholly or in part directly or indirectly due to this voluntary exposure to unnecessary danger.   That he did not use ordinary care, prudence and foresight and that his own negligence contributed to his death.   I find that the notice of death was good and complied with the requirements of the by-laws and conditions of policy.   Upon all the evidence it appears and I find as a fact that the death of Frank F. Morse was not accidental under the terms of the policy issued to him and that there can be no recovery under said policy."

It is hard to criticize the conduct of those who have paid for their imprudence, as these young men did, with their lives.   But upon the facts found by the master it is plain, we think, that there can be no recovery under the policy, and that the decree dismissing the bill was right and must be affirmed.

The deceased and his companion were warned of the danger by those whose experience and occupations should have caused their opinion concerning the conditions which existed in regard to wind and weather to be listened to and heeded.   They knew that there were no canoes out on the lake because it was considered too dangerous for canoes to be out.   They made no inquiries of any one as to the conditions which they would meet.   Apparently they relied on the fact that they had made the trip safely in the morning, and on the appearance of the lake as far as they could see it from the shore.   But to start out as the deceased did could be found to be, as the master has found that it was, a lack of ordinary care and prudence on his part and a voluntary exposure to unnecessary danger which contributed to and caused his death; and which, therefore, according to the express terms of the certificate, pre-

vents any recovery. The case is not one of a catastrophe resulting from an over-confidence for which there were reasonable grounds, or from an error of judgment in regard to a matter concerning which prudent men might differ, but it involved a disregard of warnings which under the circumstances the master was warranted in finding the insured was bound in the exercise of due care to heed, and a hazardous exposure to the conditions of wind and weather which ordinary prudence and foresight forbade. See *Tuttle* v. *Travellers' Ins. Co.* 134 Mass. 175; *Smith* v. *Ætna Life Ins. Co.* 185 Mass. 74; *Garcelon* v. *Commercial Travellers' Eastern Accident Association,* 195 Mass. 531.

The result is that the decree must be affirmed.

*So ordered.*

*J. W. Morton,* for the plaintiff.

*W. F. Merritt & N. T. Merritt, Jr.,* for the defendant, submitted a brief.